## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LONA M. VARNER and LONNIE D. TINSLEY, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. CIV-10-636-F |
| | ) |
| CITY OF EL RENO, OKLAHOMA, THOMAS DURAN, FRANK TINGA, JOSEPH SANDBERG, police officers, and JOHN DOES NOS. 1-10, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the court is Defendants' Motion for Summary Judgment, filed January 3, 2011 (doc. no. 29). The motion is fully briefed and ripe for determination.

Background

Plaintiffs, Lona M. Varner and Lonnie D. Tinsley, bring this 42 U.S.C. § 1983 action against defendants, City of El Reno, Oklahoma, Thomas Duran, Frank Tinga and Joseph Sandberg,[1] alleging violations of their fourth and fourteenth amendment rights. Specifically, plaintiffs allege that they were unlawfully seized and subjected to the use of excessive force. Plaintiff, Lona M. Varner, also alleges claims against defendants under Oklahoma law for destruction of property, false arrest and imprisonment, assault and battery and intentional infliction of emotional distress. Likewise, plaintiff, Lonnie D. Tinsley, alleges claims against defendants under

---

[1] In their complaint, plaintiffs also named as defendants John Doe Nos. 1-10. On March 4, 2011, the court entered an order dismissing without prejudice plaintiffs' action against these defendants pursuant to Rule 4(m), Fed. R. Civ. P.

Oklahoma law for false arrest, assault and battery and negligent and intentional infliction of emotional distress.  Defendants seek summary judgment on all of plaintiffs' claims.

Standard of Review

Under Rule 56, Fed. R. Civ. P., summary judgment shall be granted if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), Fed. R. Civ. P.  The moving party has the burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  All reasonable inferences to be drawn from the undisputed facts are to be determined in a light most favorable to the non-movant.  United States v. Agri Services, Inc., 81 F.3d 1002, 1005 (10th Cir. 1996).  Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials, demonstrating that there is a genuine issue for trial.  Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

Relevant Facts

To put it mildly, many of the relevant facts in this case are disputed.  Nonetheless, the court, as stated, "views the facts and draw reasonable inferences" in a light most favorable to plaintiffs.  Cavanaugh v. Woods Cross City, 625 F.3d 661, 662 (10th Cir. 2010) (quotation omitted).  The following relevant facts are therefore either undisputed or viewed in a light most favorable to plaintiffs.

At approximately 1832 hours on December 22, 2009, the City of El Reno Police Department Dispatch received a call from "Kendra with Parkview Home Health" stating that she had "a patient saying she's going to kill herself" and that the patient had taken "12 pills." Ex. 4 to Attach. E. to defendants' motion.  The caller could not provide any information regarding what pills were taken but advised that the patient was a "COPDer" and had access to blood pressure pills, Xanax, Soma, Prednisone and breathing medicine.  The caller identified plaintiff, Lona M. Varner ("Varner"), as the patient and provided the dispatcher with Varner's address.  The caller also advised that Varner was "87" years old.[2]  *Id.*

At approximately 1834 hours, the City of El Reno Police Department Dispatch received another call, this one from plaintiff, Lonnie D. Tinsley ("Tinsley").  Tinsley requested an ambulance or paramedics to check out his grandmother (Varner).  Tinsley told the dispatcher that his grandmother had said "her life is over" and "[s]he wants to end it."  Ex. 6 to Attach. E to defendants' motion; Ex. G to plaintiffs' response, p. 21, ll. 8-10.  Tinsley advised the dispatcher that his grandmother was "85" years old and that she had taken medicine, but would not tell him what she took.  He also advised that his grandmother was "kind of upset."  Ex. 6 to Attach. E to defendants' motion.  The dispatcher told Tinsley that an ambulance was started.  Ex. 6 to Attach. E to defendants' motion.

Defendant, Thomas Duran ("Duran"), a police officer with the City of El Reno Police Department, was dispatched to Varner's address.  The dispatcher advised Duran that it was suicide threat.  Ex. 4 to Attach. A to defendants' motion.  In response to further inquiry by Duran regarding the threat, the dispatcher advised Duran that there were no weapons and that it was an "87-year-old female overdose on

---

[2]  The record reveals that Varner was actually 86 years old.

3

medication." *Id*. The dispatcher additionally advised Duran that there was a relative with the "female" and Park View Hospital EMS was in route. *Id*.

When Duran arrived at Varner's address, the front door to Varner's apartment was open. It had been left open by Tinsley who was waiting for the ambulance. Duran entered the apartment without knocking. Varner was lying in a hospital-type bed in the living room and was connected to a portable oxygen concentrator with a long hose. Tinsley was standing at the foot of her bed. Varner had a kitchen knife in her right hand and was, by her account, getting ready to slice an orange. When Varner saw Duran, she raised the knife and told Duran to leave her apartment. Varner stated that Duran was not welcome and that she did not call for him. Duran immediately called for another unit. In so doing, Duran stated that the "elderly female has a knife" and was "telling [Duran] to stay away from her." Ex. 4 to Attach. A of defendants' motion. Duran also stated that Varner had said she was "not going to go the hospital." *Id*. Tinsley told Duran that he could get the knife from his grandmother, but when he started to approach Varner, Duran pushed Tinsley back and said "no." Attach. G to plaintiffs' response, p. 34, ll. 1-3.

Shortly thereafter, defendant, Frank Tinga ("Tinga"), defendant Joseph Sandberg ("Sandberg") and Jeremy Gore, all police officers with the City of El Reno Police Department, arrived at Varner's apartment. When Tinga saw Varner, he told Duran to "tase her." Attach. D to plaintiffs' response, p. 36, ll. 4-5, p. 37. l. 21; Attach. B to defendants' motion, ¶ 9. Duran deployed his Taser on Varner but only one prong struck her. Varner did not drop the knife. She was instructed to drop the knife, but she was unable to do so because of the effect of the Taser. Attach. B to plaintiffs' response, response to interrogatory no. 15; Attach. C to plaintiffs' response, responses to requests for admission, nos. 5 and 6. Varner told the paramedic that the police officers had stepped on her oxygen hose and she needed a breathing treatment.

The paramedic retrieved Varner's "nebulizer tube and all, put it together, [and] put the medication in it."   Attach. D to plaintiffs' response;  p. 41, ll.  9-13.   When the paramedic started to hand the tube to Varner, he looked over at the officers and laid the tube over the arm of a chair instead of giving it to Varner.  Varner tried to reach for the tube and Sandberg deployed his Taser on Varner.  Sandberg  tased Varner in the chest.   He had the Taser cycle three times.  Duran and Tinga took the knife away from Varner.  While doing so, Duran grabbed Varner's forearm and she received a laceration from her elbow to her wrist.  Varner was handcuffed.  Attach. B to plaintiffs' response,  response to interrogatory no. 9.

When Tinga told Duran to tase Varner, Tinsley told the officers not  to tase his grandmother.  Tinsley was immediately spun around and thrown to the hallway floor by Tinga and Officer Gore.   Tinsley hit the back wheel of Varner's electric wheelchair, injuring his head and left ear.  Although personnel with Parkview Hospital EMS asked to look at Tinsley's ear, which was bleeding, the officers refused to allow that. Tinsley was handcuffed and placed in the back seat of Officer Gore's police car.  Subsequently, Tinsley was released and was allowed to go to the hospital.

Varner arrived at Park View Hospital at approximately 1925 hours and the Taser prongs were taken out and her forearm was treated.  In the early morning hours, Varner was transported to St. Anthony's Hospital for mental evaluation.  Duran signed an affidavit to have her detained for the evaluation.  She was at the hospital for six days.

Discussion

I.  Federal Claims

Duran, Sandberg and Tinga contend that they are entitled to summary judgment on the basis of qualified immunity for both of the federal claims alleged by Varner and

Tinsley.   When a defendant moving for summary judgment asserts qualified immunity, the court must conduct a two-part analysis:

> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right.   Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.

Cavanaugh, 625 F.3d at 664 (quoting Pearson v. Callahan, 129 U.S. 808, 815-816 (2009)).   Thus, the court must determine whether plaintiffs have made the two part showing.   Id.

A.   Unlawful Seizure/Detention - Varner

Varner alleges that her fourth and fourteenth amendment rights were violated when she was taken into protective custody without probable cause.   The Fourth Amendment requires an official seizing and detaining a person for a psychiatric evaluation to have probable cause to believe that the person is dangerous to herself or others.   Monday v. Oullette, 118 F.3d 1099, 1102 (6th Cir. 1997).   A showing of probable cause with respect to a mental health-related seizure requires only a "probability or substantial chance of dangerous behavior, not an actual showing of such behavior."   Id. (quotation omitted). Courts evaluate the existence of probable cause from the perspective of a reasonable and objective person in the position of the seizing official.   Id.

Viewing the facts in a light most favorable to Varner, the court finds that Duran, Sandberg and Tinga are entitled to qualified immunity on Varner's claim of unlawful seizure and detention.   The court finds that the officers had probable cause to believe that Varner was dangerous to herself and should be taken into protective custody.   The information the officers had at the time indicated that Varner  had overdosed on medication, was suicidal, and was holding a knife.   A reasonable and

objective person in the position of the defendants would have concluded that Varner was attempting suicide or at least might injure herself if not taken into protective custody. Moreover, the court concludes that the officers had a right to take her into protective custody under Okla. Stat. tit. 43A § 5-207. Section 5-207(B) provides that "[a]ny peace officer who reasonably believes that a person is a person requiring treatment as defined in Section 1-103 of this title shall take the person into protective custody." Okla. Stat. tit. 43A, § 5-207(B). Section 1-103(13)(1) defines "[p]erson requiring treatment" as "a person who because of a mental illness of the person represents a risk of harm to self or others." Okla. Stat. tit. 43A, § 1-103(13)(1). Section 1-103(3) defines "[m]ental illness" as "a substantial disorder of thought, mood, perception, psychological orientation or memory that significantly impairs judgment, behavior, capacity to recognize reality or ability to meet the ordinary demands of life." Okla. Stat. tit. 43A, § 1-103(3). Section 1-103(18)(a) also defines "[r]isk of harm to self or others" as "a substantial risk of immediate physical harm to self as manifested by evidence or serious threats of or attempts at suicide or other significant self-inflicted bodily harm." Okla. Stat. tit. 43A, § 1-103(18)(a). The court concludes that the facts, viewed in a light most favorable to Varner, establish that the officers had probable cause to take Varner into protective custody. Because there was probable cause to seize and take Varner into protective custody, the court finds that Varner cannot show that the officers violated her fourth and fourteenth amendment rights. Consequently, the court finds that Duran, Sandberg and Tinga are entitled to qualified immunity on Varner's unlawful seizure and detention claim.

B. Unlawful Seizure - Tinsley

Tinsley alleges that his fourth and fourteenth amendment rights were violated when he was unlawfully seized by Tinga. Tinga, however, argues that Tinsley's seizure was lawful due to Tinsley's interference with the police officers' detention and

tasering of Varner.  Specifically, Tinga contends that Tinsley violated Okla. Stat. tit. 21, § 540.  Section 540 states that "[e]very person who willfully delays or obstructs any public officer in the discharge or attempt to discharge any duty of his office, is guilty of a misdemeanor."  Okla. Stat. tit. 21, § 540.  According to Tinga, Oklahoma courts have held that words alone are sufficient to violate § 540.  Trent v. State, 777 P.2d 401 (Okla. Crim. App. 1989); Marsh v. State, 761 P.2d 915 (Okla. Crim. App. 1988).

"Probable cause to arrest exists if the facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe the arrestee has committed or is committing an offense."  Guffey v. Wyatt, 18 F.3d 869, 872 (10th Cir. 1994) (quotation omitted).  Viewing the facts in light most favorable to Tinsley, the court finds that there was no probable cause to arrest Tinsley for obstructing the police officers in the course of their discharge or attempt to discharge their duties.  Tinsley told the police officers not to tase his grandmother.  While words alone may violate § 540, the nature of the utterances remain critical to the constitutional analysis.  Guffey v. Wyatt, 18 F.3d at 872.  "'[T]he First Amendment protects a significant amount of verbal criticism and challenge directed a police officers." Id. (quoting City of Houston, Tex. v. Hill, 482 U.S. 451, 461 (1987).  If, as Tinsley asserts, he was seized because he said not to tase his grandmother, the court concludes that probable cause did not exist to seize Tinsley.  Guffey, 18 F.3d at 873 (athletic official refusing to call more fouls as requested by the police officer and responding to the police officer " you don't have any business out here on the basketball floor" was not obstructing or interfering with the police officer).  In Guffey, the Tenth Circuit said "[w]hile [plaintiff's] words may have irked [defendant officer], the defendant "may not exercise the awesome power at [his] disposal to punish individuals for conduct

8

that is not merely lawful, but protected by the First Amendment." *Id.* at 872. According to the Tenth Circuit, words that inflict injury or tend to incite immediate breach of the peace are not protected by the First Amendment. Guffey, 18 F.3d at 872 n. 5 (citing Chaplinsky v. New Hampshire, 315 U.S. 568 (1942)). The court concludes that Tinsley's statement to the police officers not to tase his grandmother was a statement of verbal criticism and challenge of police action rather than a statement tending to inflict injury or incite an immediate breach of the peace. The court therefore concludes that, under Tinsley's version of the facts, probable cause did not exist to arrest Tinsley for violation of § 540.

The court also concludes that it was clearly established as of December 22, 2009 that if Tinga seized Tinsley due to verbal criticism or challenge of police action, Tinga acted without probable cause to make the seizure. Guffey, 18 F.3d at 873. The court therefore concludes that Tinga is not entitled to qualified immunity as to Tinsley's claim of unlawful seizure.

## C.  Excessive Force -Varner Against Duran and Sandberg

Varner alleges that Duran and Sandberg violated her fourth and fourteenth amendment rights by using excessive force. Excessive force claims are governed by the fourth amendment's "objective reasonableness" standard. Cavanaugh, 625 F.3d at 664 (citing Graham v. Connor, 490 U.S. 386, 388 (1989)). Under this standard, the court must "careful[ly] balance . . . the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (quoting Graham, 490 U.S. at 396.) "'The ultimate question "is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them."'" *Id.* (quoting Casey v. City of Federal Heights, 509 F.3d 1278 (10th Cir. 2007), quoting Graham, 490 U.S. at 397.) "This determination 'requires careful attention to the facts and circumstances of each particular case,

9

including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" Casey, 509 F.3d at 1281 (quoting Graham, 490 U.S. at 396).

Applying the Graham analysis to the facts in a light most favorable to Varner, Duran and Sandberg's conduct  was objectively unreasonable.  Duran and Sandberg each deployed a Taser on Varner.  "Although Tasers may not constitute deadly force, their use unquestionably 'seizes' the victim in an abrupt and violent manner." Cavanaugh, 625 F.3d at 665.  "Accordingly, the 'nature and quality' of the intrusion into the interests of [Varner] protected by the Fourth Amendment was quite severe." Id.  Continuing with the analysis, the use of force was not justified by any of the Graham factors.  First, Varner was not suspected of committing any crime. Duran and Sandberg were present in Varner's apartment in response to two calls reporting Varner's overdose of medication.  Second, while Varner possessed a knife at the time the Tasers were deployed, if Varner's version of the facts is credited, Varner did not pose an immediate threat to Duran or Sandberg or any one else.  According to Varner, she did not threaten the police officers.  Moreover, she contends that she was not given any warning before she was tased.  At the time of the incident, Varner was 86 years old and in a hospital-type bed hooked up to an oxygen concentrator with a long hose.  Although she heard a request to drop the knife after she was tased, Varner could not open her hand to do so because of the deployment of the initial Taser.   When she was reaching for her breathing treatment, she was then tased by Sandberg.  These facts certainly could lead a reasonable jury to conclude Varner did not pose any threat to the officers or others at the scene. Third, when the Tasers were deployed by Duran and Sandberg, Varner, under her version of the facts, was neither actively resisting or fleeing arrest from the police officers.

In sum, under Varner's version of the facts, the <u>Graham</u> factors do not justify Duran and Sandberg's use of the Tasers on Varner.   Accordingly, Varner has established that Duran and Sanberg's use of force violated the Fourth Amendment.

Following <u>Casey v. City of Federal Heights</u> and <u>Cavanaugh v. Woods Cross City</u>, the court concludes that it was clearly established as of December 22, 2009 that Duran and Sandberg could not use a Taser on Varner, who had committed no crime and who did not pose any threat, did not resist or evade arrest and did not have any prior warning.   Therefore, the court finds that Duran and Sandberg are not entitled to summary judgment on the ground of qualified immunity for Varner's excessive force claim.

D.   Excessive Force -Varner Against Tinga

Varner additionally alleges that Tinga violated her constitutional rights by failing to intervene in the use of Tasers by Duran and Sandberg.   "[A] law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983."   <u>Mick v. Brewer</u>, 76 F.3d 1127, 1136 (10th Cir. 1996).

As discussed, Varner has established, under her version of the facts, that the use of Tasers by Duran and Sandberg's violated Varner's fourth and fourteenth amendment rights.   Given Tinga's close proximity to the deployment of the Tasers and the fact that he initially directed Duran to deploy the Taser on Varner, the court finds that Varner has established a § 1983 claim against Tinga.

As stated in <u>Vondrak v. City of Las Cruces</u>, 535 F.3d 1198, 1210 (10th Cir. 2008), it is clearly established:

> that all law enforcement officials have an affirmative duty to intervene
> to protect the constitutional rights of citizens from infringement by other
> law enforcement officers in their presence. An officer who fails to
> intercede is liable for the preventable harm caused by the actions of the

11

> other officers where that officer observes or has reason to know: (1) that
> excessive force is being used, (2) that a citizen has been unjustifiably
> arrested, or (3) that any constitutional violation has been committed by
> a law enforcement official. In order for liability to attach, there must
> have been a realistic opportunity to intervene to prevent the harm from
> occurring. Whether an officer had sufficient time to intercede or was
> capable of preventing the harm being caused by another officer is an
> issue of fact for the jury unless, considering all the evidence, a
> reasonable jury could not possibly conclude otherwise.

As it was clearly established as of December 22, 2009, that Tinga had an affirmative
duty to intervene to prevent another law enforcement official's use of excessive force,
the court finds that Tinga is not entitled to summary judgment on Varner's excessive
force claim based upon qualified immunity.

E.  Municipal Liability - Varner Against City of El Reno

"A plaintiff suing a municipality under Section 1983 for the acts of one of its
employees must prove: (1) that a municipal employee committed a constitutional
violation; and (2) that a municipal policy or custom was the moving force behind the
constitutional deprivation."  Cavanaugh, 625 F.3d at 667.

Under Varner's version of the facts, Varner has established a violation of her
constitutional rights by Duran and Sandberg for use of the Tasers.  Therefore, Varner
has established the first element of her claim against the City of El Reno.  As to the
second element, Varner contends that the City of El Reno had a "custom or persistent
practice" of the wanton use of Tasers and that the City of El Reno failed to adequately
train its officers concerning the use of Tasers.

As to the "custom and practice" contention, Varner, in briefing, asserts that in
November, 2008,  police officers for the City of El Reno Police Department tasered
a driver who was in severe diabetic shock and handcuffed him.  According to Varner,
the Chief of Police later said that the police officers thought the driver was drunk and

resisting arrest.  Varner contends that the Council on Law Enforcement Education and Training ("CLEET") noted after the incident that the police are to be trained in dealing with types 1 and 2 diabetics, pursuant to state law.  Varner maintains that the November 2008 tasing incident served as notice of regarding the use of Tasers and also showed a wanton use of Tasers by police officers for the City of El Reno Police Department.  *See*, plaintiffs' response, p. 26.

Although Varner mentions the November 2008 tasing in her brief, she has proffered no evidence about that incident.  Under LCvR 7.1(j), "[f]actual statements or documents appearing only in briefs shall not be deemed to be a part of the record, unless specifically permitted by the Court."  The court has not permitted Varner to refer to the November 2008 without proffering evidence to support it.  Although Varner also relies upon her expert to support her "custom or persistent practice" claim against the City of El Reno, the opinions proffered by the expert do not discuss any "custom or persistent practice" regarding the wanton use of Tasers.  The expert also does not discuss the November 2008 incident.  The court concludes that Varner has failed to present sufficient evidence to raise a genuine issue of material fact as to the municipal liability claim against the City of El Reno based upon "custom or persistent practice."

Varner also argues that the City of El Reno is liable under § 1983 because the police officers were inadequately trained in regard to the use of Tasers.  To prevail on a claim against a municipality for failure to train its police officers in the use of force, Varner must first prove that the training was inadequate and then satisfy the following requirements:

(1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situations with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of

the city toward persons with whom the police officers come into contact, and (4) there is a direct causal link between the constitutional deprivation and the inadequate training.

Carr v. Castle, 337 F.3d 1221, 1228 (10th Cir. 2003).  Even assuming that Varner has presented sufficient evidence of inadequate training, the court finds that Varner has failed to presented sufficient evidence to raise a genuine issue of material fact as to the deliberate indifference or direct causal link requirements.  To establish the deliberate indifference requirement, Varner must show that the City of El Reno's action or inaction demonstrates conscious disregard for constitutional protections.

The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm.

Carr, 337 F.3d at 1229.  In this case, Varner's evidence fails to show that the City of El Reno had actual or constructive notice that the alleged failure to train was substantially certain to result in a constitutional violation.  Varner has failed to provided evidence of how the City of El Reno had notice that its actions or failures to act were likely to result in constitutional violations.  Varner's bare allegations of the November 2008 tasering are not sufficient to show notice.  Although Varner relies upon her expert for the failure-to-train claim, the expert fails to show that a need for training was obvious to the City of El Reno.  The expert has not provided evidence of how the City had notice that its actions or failures to act were likely to result in constitutional violations.  Furthermore, Varner has not demonstrated how the City consciously chose to disregard the risk of harm.

The court additionally finds that Varner has failed to proffer evidence to demonstrate that the alleged inadequate training of the police officers was directly and

14

causally linked to Varner's injury. The identified deficiency in the City of El Reno's training program must be closely related to the ultimate injury, so that it actually caused the constitutional violation. Carr, 337 F.3d at 1231. Varner has failed to proffer evidence to raise a genuine issue of material fact that the alleged inadequate training of the police officers led directly to the excessive force against Varner. Carr, 337 F.3d at 1231-1232.

In light of the foregoing, the court concludes that the City of El Reno is entitled to summary judgment on Varner's municipal liability claim under § 1983.

F.  Excessive Force  - Tinsley Against Tinga

Tinsley alleges that Tinga violated his fourth and fourteenth amendment rights by the use of excessive force in effecting his seizure. "[I]n cases involving claims of both unlawful arrest and excessive force arising from a single encounter, it is necessary to consider both the justification the officers had for the arrest and the degree of force they used to effect it." Cortez v. McCauley, 478 F.3d 1108, 1127 (10th Cir. 2007). If Tinsley can prove that Tinga lacked probable cause, he is entitled to damages for the unlawful arrest, which includes damages resulting from any force employed in effecting the arrest. Id. If, Tinsley can prove Tinga used greater force than would have been reasonably necessary to effect a lawful arrest, he is entitled to damages from that excessive force. Id. The two inquiries are separate and independent, although the evidence may overlap. Id. Tinsley can succeed in proving unlawful arrest, or excessive force, or both, or neither. Id.

Since Tinga has raised the qualified immunity defense as to Tinsley's excessive force claim, Tinsley must show that the force used by Tinga was impermissible (i.e., a constitutional violation) and that objectively reasonable officers could not have thought the force constitutionally permissible (violates clearly established law). Cortez, 478 F.3d at 1128.

Applying the <u>Graham</u> factors to the facts in light most favorable to Tinsley, Tinga's conduct was objectively unreasonable.   Under his version of the facts, Tinsley did not commit a crime.  If a crime was involved, it was a misdemeanor and thus a minor offense.  In addition, Tinsley did not pose an immediate threat to any of the police officers and was not actively resisting or evading arrest at the time of Tinga's conduct.  On the facts viewed in a light most favorable to Tinsley, Tinga and Officer Gore spun Tinsley around and threw him to the hallway floor of Varner's apartment, causing Tinsley to hit Varner's electric wheelchair.  Tinsley injured his head and cut his ear from the fall.  Under the <u>Graham</u> factors, the court, on the basis of Tinsley's version of the facts, finds the force exceeded what was necessary to effectuate an arrest.

Tinga argues that Tinsley cannot show that any alleged injury to his head and ear was anything more than de minimis and therefore his claim is not actionable. Tinga maintains that Tinsley did not seek any medical assistance with regard to his injuries and has not listed any medical records, photographs or any injury in his final exhibit list.  Also, Tinga asserts that Tinsley testified in deposition that he did not see blood coming out of his ear and that he did not have any lumps on his head.

The Supreme Court in <u>Graham</u> cautioned that not every "push or shove" by a police officer is a fourth amendment violation.  <u>Graham,</u> 490 U.S. at 396.  Heeding that warning, the Tenth Circuit has rejected a fourth amendment claim premised on unduly tight handcuffing, explaining that "a claim of excessive force requires some actual injury that is not de minimis, be it physical or emotional." <u>Cortez,</u> 478 F.3d at 1129.  However, the plaintiff's allegation in <u>Cortez</u> involved allegations that the police officer ignored pleas that his handcuffs were too tight.  The evidence was that the handcuffs left red marks and were visible for days.  The Tenth Circuit concluded that

his injury was insufficient, as a matter of law, to support an excessive force claim if the use of handcuffs was "otherwise justified." *Id*.

However, Cortez did not overrule prior precedent that "proof of physical injury manifested by visible cuts, bruises, abrasions or scars, is not an essential element of an excessive force claim." Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1195 (10th Cir. 2001). "[T]he interests protected by the Fourth Amendment are not confined to the right to be secure against physical harm; they include liberty, property, and privacy interests- a person's 'sense of security' and individual dignity." *Id*. 268 F.3d at 1195. The holding of Holland, reaffirmed by Cortez, was that an excessive force claim is not dependent on physical injury but on "patently unreasonable conduct" by the arresting officer. Cortez, 478 F.3d at 1131. Here, Tinsley is not complaining of being handcuffed but of being thrown down by two officers and hitting his head and ear on an electric wheelchair, when the alleged crime at issue was minor and he was not resisting arrest or posing any threat to the officers.

The court concludes that the force established under Tinsley's version of the facts is greater that what would have been reasonable to effectuate a lawful arrest under the circumstances. Despite Tinga's argument as to the de minimis nature of Tinga's injuries, the court concludes that a review of the facts in a light most favorable to Tinsley gives rise to a jury question as to whether Tinga acted reasonably. Moreover, the court concludes that the contours of Tinsley's fourth amendment rights in the situation at issue were clearly established at the time of Tinga's excessive use of force. Olsen v. Layton Hills Mall, 312 F.3d 1304, 1314-15 (10th Cir. 2002) (holding that a plaintiff's allegations that an officer who was arresting him at a mall for suspected credit card fraud pushed him ten feet into a store window and then pushed his arm up into the middle of his back while handcuffing him, despite the fact he was passively cooperating, were sufficient to support an excessive force claim.)

17

The court therefore concludes that Tinsley's excessive force claim survives summary judgment.

## II.  State Claims

### A.  Destruction of Property  - Varner Against Duran, Sandberg and Tinga

Varner alleges a claim under Oklahoma law against Duran, Sandberg and Tinga for destruction of property.  The court concludes that Duran, Sandberg and Tinga are entitled to summary judgment on Varner's claim on the basis that they are immune from liability under the Governmental Tort Claims Act ("GTCA"), Okla. Stat. tit. 51, § 151, *et seq*.  Section 153 states that "[t]he state or a political subdivision shall be liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment . . . ."  Okla. Stat. tit. 51, § 153(A).   It also states that "[t]he liability of the state or political subdivision under this act shall be exclusive and in place of all other liability of the state, political subdivision or employee at common law or otherwise."  Okla. Stat. tit. 51, § 153(B).  It also states that "[i]n no instance shall an employee of the state or political subdivision be named as defendant."  Okla. Stat. tit. 51, § 163(c).  The GTCA defines "scope of employment" as "performance by an employee acting in good faith within the duties" of the employee's employment.  Okla. Stat. tit. 51, § 152(12).

In her briefing, Varner does not specifically articulate a basis for finding that the police officers were acting outside the scope of their employment with respect to this claim.  And the court notes that the City of El Reno has not argued that the police officers were acting outside the scope of their employment.  As discussed below, Varner has not presented sufficient evidence to support a destruction of property claim.  The court also finds that Varner has failed to present sufficient evidence to raise a genuine issue of fact that the police officers were acting outside the scope of

their employment.  Consequently, the court finds that Duran, Sandberg and Tinga are entitled to summary judgment on Varner's claim of destruction of property.

B.  Destruction of Property - Varner Against City of El Reno

As to Varner's claim against the City of El Reno for destruction of property, the court finds that Varner has failed to present sufficient evidence to raise a genuine issue of material fact as to this claim.  Varner has not proffered adequate evidence to show that any of her property was damaged or harmed by the police officers.  Although Varner alleges that the police officers stepped on her oxygen hose, there is no evidence that the hose was damaged.  In addition, Tinsley testified in deposition that he did not have to repair anything at Varner's apartment after the incident.  In sum, the court finds that the City of El Reno is entitled to summary judgment on Varner's destruction of property claim.

C.  False Arrest and Imprisonment - Varner Against Duran, Sandberg and Tinga

Varner alleges a claim under Oklahoma law against Duran, Sandberg and Tinga for false arrest and imprisonment.  As with the destruction of property claim, the court finds that Duran, Sandberg and Tinga are entitled to summary judgment on the basis that they are immune from liability under the GTCA.  Okla. Stat. tit. 51, §§ 153 and 163(c); *see also*, Overall v. State ex rel. Dept. of Public Safety, 910 P.2d 1087, 1093 (Okla. Ct. App. 1995) (liability imposed upon municipality rather than troopers for claim of false arrest); DeCorte v. Robinson, 969 P.2d 358, 362 (Okla. 1998) (upholding a jury's finding that police officer was acting in good faith in making false arrest).

D.  False Arrest/ Imprisonment - Varner Against City of El Reno

As to Varner's false arrest/imprisonment claim against the City of El Reno, the court finds that the City of El Reno is entitled to summary judgment.  The court has found that the police officers had probable cause to take Varner into protective

custody.  In light of this finding, the court concludes that Varner's claim against the City of El Reno cannot survive summary judgment.

E.  Assault and Battery - Varner Against Duran, Sandberg and Tinga

Varner alleges an assault and battery claim against Duran, Sandberg and Tinga. The court again finds that Duran, Sandberg and Tinga are immune from liability under the GTCA and are therefore entitled to summary judgment.  As with the other state law claims, Varner does not adequately articulate or demonstrate that the police officers were acting outside the scope of their employment at the time of the incident. See, Morales v. City of Oklahoma City ex rel. Oklahoma City Police Dept., 230 P.3d 869, 880 (Okla. 2010) (use of excessive force may be proved without regard to whether police officer was acting in good faith).

The court additionally finds that summary judgment is appropriate as to Varner's claim against Tinga as there is no evidence that Tinga deployed a Taser on Varner or caused the laceration on Varner's forearm.

F.  Assault and Battery - Varner Against City of El Reno

As to Varner's claim against the City of El Reno, the court finds that the  City of El Reno is not entitled to summary judgment.  In light of the court's finding in regard to Varner's excessive force claim, the court concludes that Varner has proffered sufficient evidence to raise a jury issue regarding the assault and battery claim.

G.  Intentional Infliction of Emotional Distress - Varner Against Duran, Sandberg and Tinga

The court finds that Duran, Sandberg and Tinga, are entitled to summary judgment on the basis that they are immune from liability for Varner's intentional infliction of emotional distress claim under the GTCA.  Varner has not adequately

articulated or demonstrated that the police officers were acting outside the scope of their employment in regard to this claim.

### H.  Intentional Infliction of Emotional Distress - Varner Against City of El Reno

As to Varner's intentional infliction of emotional distress claim, the court finds that summary judgment is not appropriate.  Despite the court's awareness of the rigorous proof required to support this claim, the court concludes that based upon Varner's version of the facts, there are genuine issues of material fact which preclude summary judgment on the claim.  The court is mindful, however, of its responsibility, clearly articulated by the Oklahoma cases defining the tort of intentional infliction of emotional distress, to carefully scrutinize the quality of evidence supporting that claim.  Therefore, the claim for intentional infliction of emotional distress will again be carefully evaluated at the Rule 50, Fed. R. Civ.  P., stage.

### I.  False Arrest - Tinsley Against Tinga

The court finds that Tinga is entitled to summary judgment on Tinsley's false arrest claim on the basis that he is immune from liability under the GTCA.  Tinsley does not adequately show or argue that Tinga was acting outside his employment at the time of his alleged conduct.

### J.  False Arrest - Tinsley Against City of El Reno

As to Tinga's false arrest claim against the City of El Reno, the court finds that summary judgment is not appropriate.  The court concludes that, in light of its finding, on Tinsley's version of the facts,  Tinga did not have probable cause to arrest Tinsley, the false arrest claim presents a jury question.

### K.  Assault and Battery - Tinsley Against Tinga

The court finds that Tinga is entitled to summary judgment on this claim because he is immune from liability under the GTCA.  As with the other state law

claims, Tinsley has not adequately articulated or shown that Tinga was acting outside the scope of his employment at the time of his alleged conduct.

L.  Assault and Battery - Tinsley Against City of El Reno

In regard to Tinsley's claim against the City of El Reno, the court finds that summary judgment is not appropriate.  In light of the court's finding on Tinsley's excessive force claim, the court finds that genuine issues of material fact exist which preclude summary judgment on the assault and battery claim.

M.  Negligent Infliction of Emotional Distress - Tinsley Against Duran, Sandberg and Tinga

As with the other state law claims, the court finds that Duran, Sandberg and Tinga are entitled to summary judgment on this claim because they are immune from liability under the GTCA.

N.  Negligent Infliction of Emotional Distress - Tinsley Against City of El Reno

Viewing the facts in a light most favorable to Tinsley, the court finds that the City of El Reno is entitled to summary judgment on this claim.  Oklahoma does not recognize a claim for negligent infliction of emotional distress as an independent tort. Kraszewski v. Baptist Medical Center of Oklahoma, Inc., 916 P.2d 241, 243 n. 1 (1996).  These claims are treated as negligence claims and the court construes Tinsley's claim as such.  To recover damages for mental suffering, Tinsley must establish a duty on the part of the police officers to protect Tinsley from injury; the defendant's breach of that duty; and an injury to the plaintiff resulting from or directly caused by the defendant's breach of duty.  *Id*.  The court concludes that the facts, viewed in a light most favorable to Tinsley, fail to show that the police officers owed a duty to protect Tinsley from emotional distress.  In Kraszewski, the Oklahoma Supreme Court allowed a husband to recover damages for emotional distress resulting from seeing his wife fatally injured because he was directly physically involved in the

accident and was damaged from viewing the injury to his wife rather than learning of it later and because he was the spouse of the party whose injury gave rise to his anguish. Although Tinsley states in briefing that he "was emotionally distraught at the sight of the police tazing his grandmother," plaintiffs' response, p. 24, Tinsley testified in deposition that he never saw Varner actually being tased. Attach. L to defendants' reply, p. 38, ll. 14-18, p. 39, ll. 8-10. Moreover, he did not know that the police officers had tased her a second time until after the incident. *Id*. at p. 38, ll. 14-18. The facts in the case at bar are distinguishable from <u>Kraszewski</u> and Tinsley has not provided any authority to support a conclusion that the police officers owed Tinsley a duty to protect him from emotional distress arising out of the tasering of his grandmother. The court therefore finds that the City of El Reno is entitled to summary judgment on this claim.

O. <u>Intentional Infliction of Emotional Distress - Tinsley Against Tinga</u>

The court finds that Tinga is entitled to summary judgment on this claim. For the reasons previously discussed, Tinga is immune from liability for this claim under the GTCA.

P. <u>Intentional Infliction of Emotional Distress - Tinsley Against City of El Reno</u>

The court finds that summary judgment is not appropriate on Tinsley's intentional infliction of emotional distress claim. Under Tinsley's version of the facts, the court concludes that there are genuine issues of material fact which preclude summary judgment on the claim. The court is mindful, however, of its responsibility, clearly articulated by the Oklahoma cases defining the tort of intentional infliction of emotional distress, to carefully scrutinize the quality of evidence supporting the claim. Therefore, Tinsley's claim for intentional infliction of emotional distress will again be carefully evaluated at the Rule 50, Fed. R. Civ. P., stage.

Conclusion

Based upon the foregoing, Defendants' Motion for Summary Judgment filed January 3, 2011 (doc. no. 29), is **GRANTED in part** and **DENIED in part**.

Summary judgment is **GRANTED** as to (1) plaintiff, Lona M. Varner's claim under 42 U.S.C. § 1983 against defendants, Thomas Duran, Joseph Sandberg and Frank Tinga, for unlawful seizure/detention; (2) plaintiff, Lona M. Varner's claims under Oklahoma law against defendants, Thomas Duran, Joseph Sandberg and Frank Tinga, for destruction of property, false arrest/imprisonment, assault and battery and intentional infliction of emotional distress; (3) plaintiff, Lona M. Varner's claim under 42 U.S.C. § 1983 against defendant, City of El Reno, Oklahoma; (4) plaintiff, Lona M. Varner's claims under Oklahoma law against defendant, City of El Reno, Oklahoma, for destruction of property and false arrest/imprisonment; (5) plaintiff, Lonnie D. Tinsley's claim under Oklahoma law against defendants, Thomas Duran, Joseph Sandberg and Frank Tinga, for negligent infliction of emotional distress; (6) plaintiff, Lonnie D. Tinsley's claims under Oklahoma law against defendant, Frank Tinga, for false arrest, assault and battery, and intentional infliction of emotional distress; and (7) plaintiff, Lonnie D. Tinsley's claim under Oklahoma law against defendant, City of El Reno, Oklahoma, for negligent infliction of emotional distress.

Summary judgment is **DENIED** as to (1) plaintiff, Lona M. Varner's claim under 42 U.S.C. § 1983 against defendants, Thomas Duran, Joseph Sandberg and Frank Tinga, for use of excessive force; (2) plaintiff, Lona M. Varner's claims under Oklahoma law against defendant, City of El Reno, Oklahoma, for assault and battery and intentional infliction of emotional distress; (3) plaintiff, Lonnie D. Tinsley's claims under 42 U.S.C. § 1983 against defendant, Frank Tinga, for unlawful seizure and use of excessive force; and (4) plaintiff, Lonnie D. Tinsley's claims under

Oklahoma law against defendant, City of El Reno, Oklahoma, for false arrest, assault and battery and intentional infliction of emotional distress.

Dated March 17, 2011.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

10-0636p014.wpd